1

2  Glenn L. Moss (State Bar No. 44307)
   Ann Murphy (State Bar No. 66947)
3  MOSS and MURPHY
   1297 B Street
4  Hayward, CA 94541

5  Tel.510-583-1155
   Fax 510-583-1299

6

7  Attorneys for Plaintiffs
   DEMONFORT CARTER and LEANDRA CARTER

8

9

10              UNITED STATES DISTRICT COURT

11

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  DEMONFORT R. CARTER, and
    LEANDRA L. CARTER,

15                  Plaintiffs      Case No. CV09 3033 BZ
                                    REQUEST FOR JUDICIAL
16  vs                             NOTICE OF DOCUMENTS IN
                                    OPPOSITION TO MOTION TO
17                                  EXPUNGE LIS PENDENS AND
    DEUTSCHE BANK NATIONAL TRUST    FOR AWARD OF ATTORNEY
18  COMPANY, AS TRUSTEE FOR         FEES; DECLARATION OF
    MORGAN STANLEY ABS CAPITAL      GLEN L. MOSS; REQUEST
19  INC TRUST 2006-HE8, ITS         FOR JUDICIAL NOTICE
    SUCCESSORS AND/OR ASSIGNS,      DATE: OCT 7 2009
20  OLD REPUBLIC DEFAULT            TIME: 10:00 A.M.
    MANAGEMENT SERVICES, A          COURT: G [15TH FLOOR SF]
21  DIVISION OF OLD REPUBLIC
    NATIONAL TITLE INSURANCE
22  COMPANY, DOES 1 through 15,

23                  Defendants
                                  /
24

25      Pursuant to Rule 201, Federal Rules of Evidence,

26  Mr. and Mrs. Carter respectfully request that the Court

27  take judicial notice of the following documents.  True

28  and correct copies of these documents are attached and

    should be considered in connection with the Motion to

MOSS & MURPHY
ATTORNEYS AT LAW
1297 B STREET
HAYWARD, CALIFORNIA 94541
(510) 583-1155

1

2    Expunge Lis Pendens and the Motion to Dismiss Complaint

3    under FRCP 12(b)(6).

4          A.    Certified Copy of Certificate of Status

5    regarding the status of Mortgage Electronic Registration

6    System Inc, also known as MERS.  This Certificate

7    establishes the corporate powers of MERS were suspended

8    at all relevant times.  The Certificate was issued August

9    31, 2009.

10         B.    Decision of Court of Common Pleas for the

11   Third Judicial Circuit in the South Carolina case of MERS

12   v. Girdvanis Jr. .

13         C.    Memorandum Opinion of Court of Appeals Second

14   District of Texas in the case of MERS, as Nominee For

15   Lender and Lender's Successor's and Assigns v. Young

16         D.    Notice of Deposit of Money and copy of the

17   Cashiers Check from US Bank for $1,050.00 pursuant to

18   Order in Alameda County Action Number HG09445086,

19   captioned Deutsche Bank v. Carter.

20   DATED:   September 3, 2009.                    MOSS & MURPHY

21                                          By

22   x/carterfed.jn                              Glen L. Moss

23

24

25

26

27

28

-2-



# State of California
## Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. (MERS)

FILE NUMBER:        C2416221
FORMATION DATE:     05/21/2002
TYPE:               DOMESTIC CORPORATION
JURISDICTION:       CALIFORNIA
STATUS:             SUSPENDED

I, DEBRA BOWEN, Secretary of State of the State of California,
hereby certify:

The records of this office indicate the Secretary of State suspended the
entity's powers, rights and privileges on November 09, 2004, pursuant to
the provisions of the California Corporations Code; the California
Franchise Tax Board suspended the entity's powers, rights and privileges
on December 01, 2005, pursuant to the provisions of the California
Revenue and Taxation Code; and the entity's powers, rights and
privileges remain suspended.



IN WITNESS WHEREOF, I execute this certificate
and affix the Great Seal of the State of
California this day of August 31, 2009.

**DEBRA BOWEN**
**Secretary of State**

LEAVITT PROCESS SERVICE
REGISTERED PROCESS SERVERS
24728 MAGNOLIA STREET
HAYWARD, CA 94545
(510) 783-9523                    FED ID 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

SEPTEMBER 1, 2009

MOSS & MURPHY
1297 B STREET
HAYWARD, CA 94541

YOUR FILE:

INVOICE NO.:        082709-2

SERVICE:        OBTAIN CERTIFICATE OF SUSPENSION
                MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.

DATE OF SERVICE:  8-31-09

CASE NUMBER:

INFORMATION OBTAINED, SEC. OF STAT
RUSH SERVICE, ADVANCED FEES        $150.00

                                   - - - - - - - -
            TOTAL DUE:             $150.00

THANK YOU FOR YOUR BUSINESS.
PLEASE PAY FROM THIS INVOICE, A STATEMENT WILL NOT BE SENT.



STATE OF SOUTH CAROLINA
COUNTY OF SUMTER
*RECORDED*
*2006 JAN 20  AM 10: 36*

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,

PLAINTIFF

VERSUS:

LEONARD F. GIRDVAINIS, JR., ET. AL.,

DEFENDANTS

IN THE COURT OF COMMON PLEAS
FOR THE THIRD JUDICIAL CIRCUIT
CIVIL ACTION #: 2005-CP-43-0278

SUPPLEMENTAL ORDER
DENYING RULE 59(e)
MOTIONS

On October 20, 2005, I issued an order dismissing this action with prejudice. The order was filed on October 21, 2005. On November 7, 2005, the Plaintiff filed a Rule 59(e) motion "to alter or amend [the] Final Order Dismissing Action." I denied the motion in an Order which was filed with the Clerk of this Court on January 11, 2006.

In the meantime counsel for the defendant submitted an Affidavit (copy attached) which he asked that I consider in support of the motion. I have reviewed the affidavit, but I have concluded that the contents are irrelevant and/or of no substantive value, because:

1.  Although the assignment to MERS [recorded in volume 852 at page 9] purports to convey the mortgage "together with the note thereby secured," MERS contractual relationship with lenders is such that the lender retains the note, the debt thereby represented, and the right to collect the debt.

    The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, *in an administrative capacity*, for the beneficial owner or owners thereof from time to time. **MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.**[1]

2.  In the Nebraska case, which MERS initiated to avoid having to pay fees levied in that State against mortgage bankers, MERS represented to the Court and/or the Court found:

    MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights

_____

[1] *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance,* 270 Neb. 529, 704 N.W.2d 784, 787

in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.

***

MERS ... **does not own the promissory notes** secured by the mortgages and has no right to payments made on the notes. **MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."**

***

To execute a MERS Mortgage, the borrower conveys the mortgage to MERS, who is acting as a contractual nominee. MERS becomes the recorded grantee, however, **the lender retains the note and servicing right**. The lender can then sell that note and servicing rights on the market and MERS records each transaction electronically on its files. When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower. *** MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members

***

MERS does not acquire "any loan or extension of credit secured by a lien on real property." MERS does not itself extend credit or acquire rights to receive payments on mortgage loans. Rather, the *lenders retain the promissory notes* and servicing rights to the mortgage, while **MERS acquires legal title to the mortgage *for recordation purposes*. MERS serves as legal title holder *in a nominee capacity*,** permitting lenders to sell their interests in the notes and servicing rights to investors without recording each transaction. But, simply stated, *MERS HAS NO INDEPENDENT RIGHT TO COLLECT ON ANY DEBT BECAUSE MERS ITSELF HAS NOT EXTENDED CREDIT, AND NONE OF THE MORTGAGE DEBTORS OWE MERS ANY MONEY.*

3.    Since MERS initiated the Nebraska litigation and prevailed in it, it is judicially estopped to disavow the positions it advanced during the litigation process there or to avoid the findings and conclusions articulated by the Nebraska Court.[2]

4.    The affiant's representation that Guaranty assigned the note and mortgage to MERS "**for valuable consideration**" is diametrically opposed to the way MERS operates, as described in the Nebraska case. As evidenced by the text of the Nebraska decision, MERS does not acquire the notes or the debts thereby represented for or without consideration. It has neither the right nor the obligation to service the debts represented by the notes and/or secured by the mortgages. As its sole source of revenue "MERS is compensated for its services through fees charged to participating MERS members."[3]

_____

[2] *State v. McCall*, 364 S.C. 205, 612 S.E.2d 453, (S.C.App.,2005); *Hawkins v. Bruno Yacht Sales, Inc.* 353 S.C. 31, 577 S.E.2d 202 (S.C.,2003).

[3] *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance*, 270 Neb. 529, 704 N.W.2d 784, 786.

5.     Furthermore, the principal/agent (nominee) relationship between its members and MERS
is such that the "close-connectedness doctrine" would prevent MERS from qualifying as a
holder in a due course without notice, even if it did acquire some ownership interest in the
debt.[4]

6.     Although there is implicit in the affidavit a suggestion that the process through which MERS
"acquires" a mortgage qualifies it as a holder in due course and protects it from defects in
transactions which preceded the acquisition, the affiant does not state whether MERS even
sees (much less examines for impropriety) the mortgage, the note, or any of the loan
documents. However, the MERS method of operation, as reported in its contracts with its
"members" and as found by the Nebraska Court, would indicate that it doesn't. Certainly,
there is no reason for it to do so, since it has nothing invested in the transaction and will
receive payment from its members irrespective of any defect in the transaction. Conse-
quently, any implication to the contrary in the affidavit would be disingenuous, if not an
outright misrepresentation.

AND IT IS SO ORDERED: JANUARY 19, 2006

_Lenwood S. Evans, Jr._
**MASTER IN EQUITY**

---

[4]   _Midfirst Bank, SSB v. C.W. Haynes & Co., Inc._ 893 F.Supp. 1304 (1994), *1318 -1319
(D.S.C.,1994: "A transferee does not take an instrument in good faith when the transferee is so closely
connected with the transferor that the transferee may be charged with knowledge of an infirmity in the
underlying transaction."

X:\DOCS\MASTER\LAW re MISCILLANEOUS STUFF\UNCONSIONABLE & ILLEGAL CONDUCT\MERS V. GIRDVAINIS -
3278\ORDER SUPPLEMENT re RULE 59 MOTION [01.18.06].wpd





# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-088-CV

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, AS NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS | APPELLANT |

V.

| | |
|---|---|
| KIM YOUNG AND ALL OCCUPANTS OF 289 CR 4764, BOYD, TEXAS 76023 | APPELLEES |

------------

FROM THE COUNTY COURT AT LAW OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Mortgage Electronic Registration Systems, as Nominee for Lender and Lender's Successors and Assigns, ("MERS") appeals from the

---

[1] *See* Tex. R. App. P. 47.4.

judgment of the county court at law of Wise County on its forcible detainer action against Appellees Kim Young and All Occupants of 289 CR 4764, Boyd, Texas 76023 ("Young"). MERS brings two issues on appeal. In its first issue, MERS argues that the trial court erred by granting judgment for possession in favor of Young on the basis of estoppel because the defense of estoppel cannot control the outcome in a forcible detainer action. In its second issue, MERS argues that the trial court erred by granting judgment for possession in favor of Young because the evidence showed that MERS owned the property and had a superior right of possession of the property. Because we hold that the evidence does not demonstrate that MERS owned the property at the time of its forcible detainer action and that the county court did not have jurisdiction to determine the issue of possession because that determination rested on the resolution of title, we reverse the judgment of the county court and render a judgment of dismissal.

Young bought the property at issue in 2002. She executed a note on the property, secured by a deed of trust. Home Loan Corporation was listed on the deed of trust as the lender and MERS was named as nominee. The deed of trust noted that MERS held legal title and had the right to foreclose and sell the property. The deed of trust did not mention Wells Fargo Home Mortgage, Inc. ("WFHM"), and no record of assignment of the note was introduced at the

hearing on MERS's forcible detainer action, but Young alleged that she made her monthly mortgage payments to WFHM in 2002 and 2003.

According to Young's testimony at the hearing in the county court, sometime in 2004, she sold the property, and she obtained information from WFHM about how the buyers could assume the debt. She testified that she followed the instructions given and paid an assumption fee and that she never received any communication from WFHM that the assumption did not go through. But she did not testify that she ever received confirmation from WFHM that the assumption had gone through, and no deed conveying the property to the buyers was introduced at the hearing. Young's attorney had the sale contract with her at the hearing, but it was not introduced into evidence.

Young testified that in 2005, she received notice that Wells Fargo Bank, N.A. had procured insurance on the property in Young's name. She stated that she then contacted the insurance company and informed it of the sale of the property and the buyer's assumption of the note.

On January 3, 2006, unbeknownst to Young, a substitute trustee conveyed the property to MERS after a nonjudicial foreclosure sale. The deed was recorded in the Wise County records. On January 12, 2006, MERS conveyed the property to the Secretary of the Department of Housing and Urban Development ("HUD").

3

In April and June of 2006, Standard Guaranty Insurance Company sent letters to Young notifying her that it had paid Wells Fargo Bank, N.A. for claims made under an insurance policy on the property. On August 30, 2006, WFHM sent Young a notice that it was renewing the insurance on the property.

Young testified that when she received this letter (which was after the nonjudicial foreclosure sale and the transfer of the property to HUD), she contacted "Wells Fargo."[2] She testified that she was told that the property had been abandoned by the buyers; the note was in default; foreclosure proceedings had been commenced on January 3, 2006, but had not been finalized; and she was still the owner of the property. She testified that an employee of "Wells Fargo" agreed to reinstate the note and send her the paperwork for reinstatement, but that she never received the paperwork despite repeated telephone calls to "Wells Fargo" and "Wells Fargo" repeatedly telling her that the note could be reinstated. Despite never receiving the paperwork, she moved back onto the property and made repairs to it.

On May 10, 2007, HUD conveyed the property under a deed without warranty to Wells Fargo Home MTG–Prudential ("WFHM–Prudential"). On June 27, 2007, a law firm acting on behalf of Wells Fargo Bank, N.A. sent Young a

---

[2] Young did not specify which Wells Fargo entity she contacted.

4

notice to vacate the property. When she refused, MERS filed a forcible detainer

action against her in the justice court. After the justice court granted

possession of the property to MERS, Young appealed to the statutory county

court. There she entered a plea to the jurisdiction and several affirmative

defenses, including estoppel and a claim that the foreclosure had not complied

with statutory requirements. At the conclusion of the hearing, the county court

stated that estoppel applied and that it was denying the detainer on that

ground. The court's judgment for Young, however, did not state the specific

grounds for denying MERS's forcible detainer. MERS now appeals.

   We consider MERS' second issue first because it is dispositive.[3] MERS

argues that the trial court erred by granting judgment for possession in favor of

Young because the evidence showed that MERS owned the property and had

a superior right of possession of the property. Young argued in the county

court and in the alternative on appeal that the county court did not have

jurisdiction over the forcible detainer action because the court could not

determine whether MERS had a superior right to immediate possession without

determining title. We agree with Young.

---

[3] 🔺 See Tex. R. App. 47.1.

5

A forcible detainer action addresses only the question of who is entitled to immediate possession of a premises.[4]  A person commits forcible detainer when the person refuses to surrender possession of real property on demand and the person is a tenant by sufferance.[5]  A plaintiff in a forcible detainer action must present sufficient evidence of ownership to demonstrate a superior right to immediate possession of the premises.[6]  A plaintiff does not, however, have to prove ownership of the property; rather, a court may determine which party has a superior right to possession without determining title when there exists a landlord-tenant relationship between the parties.[7]  A court does not have to determine title in such a case because the existence of the landlord-tenant relationship provides a basis for determining the right to possession without resolving the issue of who owns the property.[8]

---

[4] 🖻 *Cattin v. Highpoint Village Apartments*, 26 S.W.3d 737, 738–39 (Tex. App.—Fort Worth 2000, pet. dism'd w.o.j.).

[5] 🖻 Tex. Prop. Code Ann. § 24.002(a) (Vernon 2000).

[6] 🖻 *Gibson v. Dynegy Midstream Servs., L.P.*, 138 S.W.3d 518, 522 (Tex. App.—Fort Worth 2004, no pet.).

[7] 🖻 *Rice v. Pinney*, 51 S.W.3d 705, 709, 712 (Tex. App.—Dallas 2001, no pet.).

[8] 🖻 *See Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that in forcible detainer action, landlord-tenant relationship presents "an independent basis on which the trial court [can] determine the right to immediate possession without resolving

In a forcible detainer case, the only issue that may be determined is the

right to actual possession; the issue of title to the property cannot be

adjudicated.[9] The losing party in a forcible detainer action brought in the justice

court may appeal to the county court for a trial de novo.[10] The taking of such

an appeal vacates the judgment of the justice court.[11] In an appeal from a

justice court, the county court does not have jurisdiction if the justice court did

not have jurisdiction, and justice courts do not have jurisdiction to decide issues

of title.[12] Significantly, although the existence of a title dispute will not deprive

a justice court of jurisdiction in a forcible detainer action, the court does not

have jurisdiction when the right to possession cannot be determined without

resolving the title issue.[13] Thus, the county court did not have jurisdiction in

---

underlying title issues"); *Brown v. Kula-Amos, Inc.*, No. 02-04-00032-CV, 2005 WL 675563, at *3 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.) (noting that forcible detainer action based on contract for deed depends upon landlord-tenant relationship and that contract for deed may provide for party to become tenant at sufferance upon default).

[9] Tex. R. Civ. P. 745.

[10] *See Cattin*, 26 S.W.3d at 739; Tex. R. Civ. P. 574b.

[11] *Harter v. Curry*, 101 Tex. 187, 105 S.W. 988, 989 (Tex. 1907); *Villalon v. Bank One*, 176 S.W.3d 66, 69–70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[12] *Gibson*, 138 S.W.3d at 522; *Rice*, 51 S.W.3d at 708–09.

[13] *Rice*, 51 S.W.3d at 713.

7

this forcible detainer case if the court could not determine the right to possession without determining title.

MERS based its claim for the right to possession on an alleged landlord-tenant relationship created by a deed from the substitute trustee's sale and the provision in the deed of trust that made Young a tenant at sufferance upon default and foreclosure. MERS submitted to the trial court a copy of the deed of trust that secured the note to Young and listed MERS as the nominal mortgagee for the lender and its successors and assigns. The deed of trust provided that if Young defaulted on the note and the property was sold at a foreclosure sale under the deed of trust, Young would become a tenant at sufferance. This kind of provision in a deed of trust is generally sufficient to establish a landlord-tenant relationship between the mortgagor and the purchaser of the property at a foreclosure sale.[14]   MERS also introduced evidence of the substitute trustee's deed showing that it purchased the property at a foreclosure sale. MERS argued in the county court that with this evidence—the substitute trustee's deed showing that MERS owned the property after purchasing it at the foreclosure sale and the deed of trust creating a landlord-tenant relationship between it and Young and showing that Young was

---

[14] ▣ *See Scott v. Hewitt,* 127 Tex. 31, 90 S.W.2d 816, 818 (1936).

8

a tenant at sufferance—the county court could have determined MERS's right to possession without determining title, despite Young's arguments with respect to the propriety of the foreclosure proceedings.[15]

But Young brought a plea to the jurisdiction, disputing MERS's assertion that it owned the property. At the hearing, Young introduced two deeds executed *after* the substitute trustee's deed: a deed conveying the property from MERS to HUD and another deed conveying the property from HUD to WFHM–Prudential. The deed from HUD does not mention MERS at all, as nominee for WFHM–Prudential or in any other capacity. All the other documents MERS introduced relating to this property did, however, specifically mention MERS. The deed of trust listed MERS, as nominee for the lender, as the beneficiary of the instrument. The substitute trustee's deed listed MERS, as nominee for the lender, as the mortgagee. The deed to HUD listed MERS, "as nominee for [the] Lender," as the grantor. But no evidence before the county court indicated that WFHM–Prudential designated MERS to act as its nominee with respect to this property after HUD conveyed it to WFHM–Prudential.

---

[15] ☒ *See Reynolds v. Wells Fargo Bank, N.A.*, 245 S.W.3d 57, 60 (Tex. App.—El Paso 2008, no pet.) (stating that argument that notice of foreclosure was improper was beyond scope of forcible detainer action because only issue in such action was right to possession).

9

On appeal, MERS argues that it brought the forcible detainer action on behalf of "Wells Fargo." It argues that it is a "book entry system" as that term is defined in section 51.0001 of the property code[16] and contends that under the deed of trust, MERS could act on behalf of "Lender and Lender's successors and assigns" and that WFHM–Prudential, as the current owner of the property, is "Lender's successor or assign with regard to the [p]roperty." Thus, MERS argues, it had authority to bring this suit on behalf of WFHM–Prudential.

MERS did not introduce evidence in the county court about the nature of its business, but it has been discussed by other courts. MERS was created for the purpose of tracking ownership interests in residential mortgages.[17] Entities such as mortgage lenders "subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages."[18] These MERS members "contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."[19]  When a mortgage is executed through a MERS member and

---

[16] *See* Tex. Prop. Code Ann. § 51.0001 (Vernon 2007) (defining term "book entry system").

[17] *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 83 (2006).

[18] *Id.*

[19] *Id.*

registered in the MERS system, it is recorded in the real property records with MERS named on the instrument as nominee or mortgagee of record.[20] While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, with MERS tracking these electronic transfers; these assignments are not recorded in the real property records.[21] If a MERS member assigns its interest in a mortgage to a non-MERS member, this assignment is recorded in the real property records and MERS deactivates the loan within its system.[22]

MERS has "no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."[23] MERS acts as the agent only for its members; once a note is transferred out of the MERS system to a non-member, MERS cannot act as the agent.[24]

─────────────

[20] *Id.*

[21] *Id.*

[22] *Id.* at n.4.

[23] *In re Hawkins*, No. BK-S-07-13593-LBR, 2009 WL 901766, at *3 (Bankr. D. Nev. Mar. 31, 2009) (mem. op.).

[24] *Id.* at *4.

The evidence in the county court showed that MERS was named as nominee for Home Loan Corporation, the original lender on the note. After Young defaulted on the note, MERS purchased the property at the substitute trustee's sale and subsequently conveyed the property to HUD. HUD later conveyed the property to WFHM–Prudential. The record did not establish that WFHM–Prudential was a member of MERS, that MERS was acting for WFHM–Prudential in bringing the forcible detainer action, or that WFHM–Prudential's ownership of the property was the type of interest that could be registered with MERS such that MERS could record the interest in its name in accordance with the property code or bring this action.[25]

According to the property records of Wise County, WFHM–Prudential holds title to the property. MERS does not. MERS did not assert in the county court that WFHM–Prudential owned the property under a deed from HUD or that it acted on behalf of WFHM–Prudential. It asserted instead that MERS itself owned the property under the substitute trustee's deed naming it as grantee "as nominee for Lender and Lender[']s Successors and Assigns." It stated that it was a nominee for "Lender" but did not specify who "Lender"

---

[25] *See* Tex. Prop. Code Ann. § 51.0001 (defining "book entry system" as "a national book entry system for registering *a beneficial interest in a security instrument*") (emphasis added).

12

was or show (or even assert) that it had any authority to bring a forcible

detainer action on behalf of WFHM-Prudential, the owner of record of the

property. It mentioned "Wells Fargo" only as having been the servicer of the

loan obtained by Young. And the evidence shows that WFHM-Prudential has

an interest in the property, not because of a deed of trust granting

WFHM-Prudential an interest that was then registered with MERS, but rather

through a deed from HUD conveying the property to Wells Fargo outright.

Thus, the fact that MERS may be a "book entry system" does not establish that

it has a landlord-tenant relationship with Young with respect to the property.

The county court had no evidence before it establishing that after HUD

transferred the property to WFHM-Prudential, that entity nominated MERS to

act for it with respect to this property. And at the hearing, MERS made no

attempt to explain the subsequent deeds to and from HUD and relied

exclusively on the substitute trustee's deed to assert its right to possession.

Young introduced evidence disputing both MERS's interest in the property

and any landlord-tenant relationship between her and MERS. Based on the

pleadings and evidence before it, the county court would have had to determine

who owned the property in order to determine whether MERS had the superior

13

right to possession.[26] Accordingly, because the county court had no jurisdiction

to determine title, and because title may not be adjudicated in a forcible

detainer action, the county court did not have jurisdiction to determine if MERS

had a superior right to immediate possession of the property. We overrule

MERS's second issue. Because we have held that the county court did not

have jurisdiction to determine MERS's claim, we do not address MERS's

remaining issue.[27]

Having held that the county court had no jurisdiction to determine MERS's

right to possession, we reverse the judgment of the county court and render

judgment dismissing this case.[28]

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: June 4, 2009

---

[26] See Dass, Inc. v. Smith, 206 S.W.3d 197, 200 (Tex. App.—Dallas
2006, no pet.); Rice, 51 S.W.3d at 712-13.

[27] See Tex. R. App. P. 47.1.

[28] See City of Wichita Falls v. Pearce, 33 S.W.3d 415, 417 (Tex.
App.—Fort Worth 2000, no pet.) (reversing trial court judgment and rendering
judgment of dismissal because trial court had no jurisdiction over claims).

14

1   Glenn L. Moss (State Bar No. 44307)
2   Ann Murphy (State Bar No. 66947)
    MOSS and MURPHY
3   1297 B Street                           **ENDORSED**
    Hayward, CA 94541                          **FILED**
4                                          **ALAMEDA COUNTY**
    Tel.510-583-1155
5   Fax 510-583-1299                        JUN - 1 2009

6                                   CLERK OF THE SUPERIOR COURT
                                        By   S. Halcrombe
    Attorneys for Defendants
7   DEMONFORT CARTER and LEANDRA CARTER

8

9        SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

10

11  DEUTSCHE BANK NATIONAL TRUST
    COMPANY, AS TRUSTEE FOR              NO. HG09445086
12  MORGAN STANLEY ABS CAPITAL
    INC TRUST 2006-HE8, ITS
13  SUCCESSORS AND/OR ASSIGNS,           NOTICE OF DEPOSIT
                                         OF MONEY PURSUANT
14                  Plaintiff,           TO COURT ORDER

15  vs.
                                         DATE: 5/28/09
16  DEMONFORT R. CARTER, LEANDRA         TIME: 2:00 PM
    L. CARTER, and DOES I through        DEPT: 511
17  X, inclusive,
                    Defendants
18  _____/

19          **PLEASE TAKE NOTICE** that defendants Demonfort R.

20  Carter and Leandra L. Carter have deposited with the

21  Clerk of the Court $1,050.00 on Monday, June 1, 2009.  A

22  copy of the cashiers check from US Bank for this sum is

23  attached to this Notice.  This deposit is being made

24  pursuant to the Order of Judge Jon Rolefson at the

25  hearing on May 28, 2009 at 2:00 p.m.

26  DATED:  May 29, 2009.              MOSS & MURPHY

27                                   By_____
                                        Glen L. Moss
28  x/carter.rec

                            -1-

**US bank**
Five Star Service Guaranteed

30286 (04/08)

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT BORDER. ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

**CASHIER'S CHECK**

**No. 8294501393**

90-3582
1222

DATE:  MAY 29, 2009

PAY     ONE THOUSAND FIFTY DOLLARS AND 00 CENTS

$ 1,050.00

TO THE
ORDER OF:   **CLERK OF THE COURT**

PURPOSE/REMITTER: LEANDRA L. CARTER

Location:   8294 KAISER CENTER

U.S. Bank National Association
Minneapolis, MN 55480

AUTHORIZED SIGNATURE

⑈8294501393⑈  ⑆122235822⑆  ⑈1⑈1534100023895⑈

PROOF OF SERVICE BY MAIL

Carter v. Deutsche Bank

I declare that:

I am employed in the County of Alameda, California. I am over the age of eighteen years and not a party to the within cause; my business address is 1297 B Street, Hayward, California, 94541. On May 29, 2009, I served the within:

**NOTICE OF DEPOSIT OF MONEY PURSUANT TO COURT ORDER**

On the parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, certified mail in the United States mail, at Hayward, California, addressed as follows:

William Partridge
PO Box 19734
San Diego, CA 92177

Steve Shorr
3796 Platt Ct.
Pleasanton, CA 94588

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 29, 2009 at Hayward, California.

Glen L. Moss

m/carter.pos

MOSS & MURPHY
ATTORNEYS AT LAW
1297 B STREET
HAYWARD, CALIFORNIA 94541
(510) 583-1155

-1-



**Superior Court of California**
**County of Alameda**

Superior Court of California, County of Alameda        Receipt Nbr: 359088
Rene C. Davidson Alameda County Courthouse             Clerk: shalcromb
1225 Fallon Street                                     Date: 06/02/2009
Oakland, CA  94612

| Type | Case Number | Description | Amount |
|------|-------------|-------------|--------|
| Deposit | HG09445086 | Deposit for StayofExecution | $1,050.00 |

Total Amount Due:       $1,050.00
Prior Payment:
Current Payment:        $1,050.00
Balance Due:                 $.00
Overage:
Excess Fee:
Change:

Payment Method:
Cash:
Check:                  $1,050.00